## IN THE UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

H&R BLOCK FINANCIAL ADVISORS, INC.    :
1801 K Street, N.W.                          :
Suite 325L                                  :
Washington, D.C. 20006,               :
                                       :
             Plaintiff,         :
                                     :
        v.                    :     No.
                                     :
J. DEREK MAJKOWSKI             :
1522 Brookside Road             :
McLean, Virginia 22101,          :
                                     :
GEORGE SHIRLEY                 :
3835 N. 9th Street                :
#306W                                :
Arlington, Virginia 22203,        :
                                     :
and JUSTIN ROMERO             :
9701 Fields Road, #601          :
Gaithersburg, Maryland 20878,    :
                                     :
            Defendants.        :

## COMPLAINT

       H&R Block Financial Advisors, Inc. ("HRBFA"), by its undersigned attorneys,

hereby brings the following Verified Complaint for injunctive relief against Defendants J. Derek

Majkowski, George Shirley and Justin Romero (collectively "Defendants") for (i) breach of

contract; (ii) misappropriation of trade secrets; (iii) conversion of confidential business

information; (iv) breach of fiduciary duty; and (v) unfair competition, and in support thereof

avers as follows:

## I.     PARTIES

1.     HRBFA is a Michigan corporation maintaining its principal place of business in Detroit, Michigan and transacting business at 1801 K Street, NW, Suite 325L, Washington, DC 20006.

2.     Defendant J. Derek Majkowski is a former financial consultant and employee in HRBFA's District of Columbia office.  Defendant Majkowski is a citizen of the Commonwealth of Virginia, residing at 1522 Brookside Road McLean, Virginia 22101.

3.     Defendant George Shirley is a former financial consultant and employee in HRBFA's District of Columbia office.  Defendant Shirley is a citizen of the Commonwealth of Virginia, residing at 3835 N. 9th St.,  #306W, Arlington, Virginia 22203

4.     Defendant Justin Romero is a former employee in HRBFA's District of Columbia office.  Defendant Romero is a citizen of the State of Maryland, residing at 9701 Fields Road, #601, Gaithersburg, Maryland 20878.

## II.     JURISDICTION AND VENUE

5.     Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. §. 1332. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.  Immediate injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65(a).  Venue is proper in this judicial district, as it is the district in which the Defendants were formerly employed with Plaintiff, and in which some or all of the conduct complained of took place.

## III.     THE FACTS

6.     HRBFA is engaged in the business of, inter alia, providing financial services.

7.    Defendant Majkowski commenced his employment with HRBFA in or about May 18, 1994.

8.    Defendant Shirley commenced his employment with HRBFA on or about September 8, 1997.

9.    Defendant Romero commenced his employment with HRBFA on or about December 1, 2003.

10.    As a condition of his employment, Defendant Majkowski agreed to comply with the terms of his Stockbroker Trainee Agreement (the "Agreement"). A copy of his agreement is attached hereto, made part hereof, and marked as Exhibit **"A."**

11.    As a condition of his employment, Defendant Shirley agreed to comply with the terms of his Stockbroker Trainee Employment Agreement and Restrictive Covenants (the "Agreement"). A copy of his agreement is attached hereto, made part hereof, and marked as Exhibit **"B."**

12.    As a condition of his employment, Defendant Romero agreed to comply with the terms of his Financial Advisor Employment Agreement and Restrictive Covenants (the "Agreement"). A copy of his agreement is attached hereto, made part hereof, and marked as Exhibit **"C."**

13.    In pertinent part, the terms, conditions and provisions of Defendants' Agreements provided that HRBFA would employ and compensate Defendants and reimburse them for certain expenses.

14.    HRBFA provided the above consideration to Defendants and has satisfied all conditions precedent.

15.   More specifically, HRBFA compensated Defendants at all times during their employment with HRBFA, provided Defendants with extensive support services, paid for facilities, computer equipment, market reporting services, and all other business expenses, provided Defendants with abundant sales opportunities, registered Defendants with applicable self-regulatory organizations, and provided Defendants with all HRBFA benefits, systems, and support at all times.

16.   In addition to the foregoing, HRBFA provided Defendants with office facilities, secretarial services, clearing services, operational systems, research, the benefit of HRBFA advertising, goodwill and name recognition, and with promotional marketing and sales support.

17.   HRBFA also provided Defendants with the ability to develop relationships with customer accounts, customer referrals, customer leads and new accounts generated by HRBFA's advertising campaigns and sister company referral network, as well as eligibility to receive "walk-in" and "call-in" customers.

18.   As a result of the foregoing, Defendants specifically had access to information and records that contained the names, addresses and confidential information of numerous HRBFA accounts, representing millions of dollars in assets under HRBFA management.  These accounts were generating approximately $600,000 in annual HRBFA commission revenues on an annualized basis at the time of their departure.

19.   In consideration of the foregoing benefits and opportunities provided by HRBFA, Defendants agreed in their Agreements to maintain as confidential, and not to disclose, any information relating to the customers Defendants served while employed with HRBFA.

20.   Defendant Majkowski agreed in his <u>Stockbroker Trainee Agreement</u> that:

6.    **CONFIDENTIALITY OF INFORMATION**.  **Employee acknowledges and agrees that during the course of Employee's employment by Company, Employee will receive, have access to, and create documents, records, and information of confidential and proprietary nature to Company and customers, affiliates, and subsidiaries of Company including, but not limited to, the names and addresses of Company's customers** and prospective customers, training and operational manuals, information concerning Company's customers' general financial position and securities portfolio as ordered through Company, research, policies, plans and systems; **all of which would not be readily available to Employee except for Employee's employment relationship with Company as a stockbroker.**

**Employee further acknowledges, understands, and agrees that such information and similar data is not generally known to the trade, is of a confidential nature, is an asset of Company, and to preserve Company's goodwill must be kept strictly confidential** and used only in the conduct of its business.

**Employee agrees the Employee will not use, disclose, copy or permit the disclosure of any of the aforementioned information** in any manner whatsoever except in accordance with the duties and in the course of Employee's employment with Company and **upon the termination of Employee's employment with Company, only with the written permission of the Company.**

**Immediately upon termination of Employee's employment, Employee will return to Company any and all of the written or recorded information described in this paragraph; including** all copies and reproductions thereof, in Employee's possession.

(Exhibit **"A"** at ¶6)  (emphasis added).

21.    Defendant Shirley similarly agreed in his <u>Stockbroker Trainee Employment Agreement and Restrictive Covenants</u> to maintain as confidential, and not to disclose, any information relating to the customers he served while employed with HRBFA:

3.    **Restrictions on Access to, Use and Dissemination of Proprietary Information.**

a.    <u>Description of Proprietary Information</u>:    I acknowledge

that during my employment with the Company **I will come into possession of trade secrets or other confidential and proprietary information of the Company (all of which will be referred to in this Agreement as "proprietary information"), including by way of example, and not limitation, the identity of customers and prospective customers of the Company; customer files and detailed information concerning customer needs, requirements, and financial position; proposals designed to meet customer or prospective customer requirements, corporate planning, research, training materials, pricing, costs and other financial information and records of the Company, and Company memoranda,** whether or not marked as confidential, in any form, paper, magnetic, optical or <u>notes</u> regarding same, summaries, books or blotters. **<u>I acknowledge that this proprietary information is highly confidential to the Company, and could not, without great expense and difficulty, be obtained or duplicated by others who have not been able to acquire such information by virtue of employment with the Company.</u>**

b.    <u>Restrictions on Disclosure and Use of Proprietary Information</u>:    **I agree that during and after my employment with the Company, unless I first obtain the prior <u>written</u> consent of the President of the Company, <u>I shall not communicate or disclose, any of the Company's proprietary information, directly or indirectly,</u> to any person or firm, or use any of the Company's proprietary information in any way at any time, whether or not such information was developed or obtained by me.** However, I understand that I may, where so authorized and approved, use such proprietary information to further my employment duties with the Company, but I agree that I shall retain all such proprietary information in strict confidence for the sole benefit of the Company.

c.    <u>Restrictions on Removal of Proprietary Information</u>:    I agree that I shall not remove any proprietary information, or any other property of the Company, from the Company's premises without prior express <u>written</u> permission from a senior officer of the Company.

d.    <u>Return of Proprietary Information and Other Property</u>:    I agree that, **upon termination of my employment with the Company, I will return all proprietary information and all other records, documents and other written, printed, photographic, magnetic, electronic, optical or physical materials of any type that belong to or pertain to the Company,**

including, without limitation, printouts, disks, tapes, customer documents, customer plans, writing and memoranda, blotters, notebooks, journals, calculations, billing information, financial information, all such data showed on electronic equipment, and all other documents relating to the Company, **then in my possession or under my control, and I agree that I shall not make or retain any copies or extracts, including handwritten summations of any such records**.

(Exhibit **"B"** at ¶3)  (emphasis added).

22.    Defendant Romero also agreed in his <u>Financial Advisor Employment Agreement and Restrictive Covenants</u> to maintain as confidential, and not to disclose, any information relating to the customers he served while employed with HRBFA:

7.    <u>**CONFIDENTIALITY OF INFORMATION**</u>.  **Employee acknowledges and agrees that during the course of Employee's employment by Company, Employee will receive, have access to, and create documents, records, and information of confidential and proprietary nature to Company and customers, affiliates, and subsidiaries of Company including, but not limited to, the names and addresses of Company's customers** and prospective customers, training and operational manuals, information concerning Company's customers' general financial position and securities portfolio as ordered through Company, research, policies, plans, and systems, **all of which would not be readily available to Employee except for Employee's employment relationship with Company as a stockbroker.**

<u>**Employee further acknowledges, understands, and agrees that such information and similar data is not generally known to the trade, is of a confidential nature, is an asset of Company, and to preserve Company's goodwill must be kept strictly confidential**</u> and used only in the conduct of its business.  <u>**Employee agrees the Employee will not use, disclose, copy or permit the disclosure of any of the aforementioned information**</u> in any manner whatsoever except in accordance with the duties and in the course of Employee's employment with Company, and upon the termination of Employee's employment with Company, only with the written permission of Company.  <u>**Immediately upon termination of Employee's employment, Employee will return to Company any and all of the written or recorded information described in this**</u>

**paragraph, including all copies and reproductions thereof, in Employee's possession.**

(Exhibit **"C"** at ¶7) (emphasis added).:

23.    Defendants also agreed not to contact or solicit any of the customers they served or otherwise had contact with during their employment with HRBFA.  Defendant Majkowski agreed that he "shall not contact or solicit any of said customers [defined as any customers having accounts with Company, with whom Employee had any contact whatsoever during the term of Employee's employment with Company] for a said period of three (3) years." (Exhibit "**A**" at ¶8A).

24.    Defendant Shirley also agreed not to contact or solicit any of the customers he served or otherwise had contact with during his employment with HRBFA:

**4.    Restrictions on Service to Customers of the Company.**

a.    <u>Covenant not to Service</u>:    **I acknowledge and agree that I have no interest in, right to or claim to any customer or customer's accoun**t or any commissions or compensation generated therefrom.  Therefore, in consideration for the Company's employing me, subject to termination as set forth in section 2a, compensating me; providing me with employment related benefits; training me; sponsoring me in securities examination(s); registering me; licensing me; providing me with office facilities and sales support; executing, processing and clearing transactions; providing research and investment recommendations; and other good and valuable consideration, the separate and collective adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, **I agree that, during the period of my employment with the Company and for a period of two (2) years after my employment with the Company terminates,** whether such termination is voluntary or involuntary, **I shall not, directly or indirectly, either individually or on behalf of another person or firm, call upon, solicit, sell (either take a buy or sell order from) or attempt to sell any products or services similar to or in competition with those offered by the Company to any person or firm that was a customer of the Company at any time during my employment with the Company,** or that was

solicited by the Company or otherwise had any contact with the Company during the six month period preceding my termination of employment with the Company.

(Exhibit **"B"** at ¶ 4a.) (emphasis added).

25.    Defendant Romero similarly agreed that he "shall not contact or solicit any of said customers [defined as any customers having accounts with Company, with whom Employee had any contact whatsoever during the term of Employee's employment with Company] for a said period of one (1) year." (Exhibit "C" at ¶9A).

26.    In addition, Defendants expressly agreed to the issuance of immediate injunctive relief in the event they violate the terms of their Agreements. Defendant Majkowski's Agreement provides:

> <u>Remedies</u>. Employee **acknowledges that Company shall be irreparably injured** if Employee violates the foregoing restrictions of Paragraph 5 and/or Paragraph 8; and that the damages for said violation will be difficult to assess. Therefore the parties further agree that the **Company shall have the right <u>ex parte</u>, without any notice whatsoever to Employee to apply for and obtain an injunction from the court with jurisdiction over the said subject matter**, enjoining Employee from breaching the said provisions, or any of them.

(Exhibit "A" at ¶10) (emphasis added).

27.    Defendant Shirley's Agreement provides:

**8.    Remedies for Breach, Injunctive Relief, Choice of Law, Arbitration, Forum Selection Provisions.**

a.    <u>Injunctive Relief and Attorneys Fees</u>:    I agree that the Company would be irreparably injured in its business and would not have an adequate remedy at law if I were to breach Sections 3, 4 or 5 of this Agreement. **I therefore agree that, the Company will be entitled to a temporary restraining order, preliminary or permanent injunction, (a) restraining me from disclosing or using any proprietary information of the Company, as described in Section 3, soliciting, rendering services or making sales to any client in violation of Section 4,** or from soliciting or

improperly contacting employees of the Company in violation of Section 5, **or (b) requiring me to return to the Company proprietary information or other property pursuant to Section 3.** I agree that the Company's remedies in the event of any such breach or violation by me would be cumulative and that the Company could also seek damages and other equitable relief in addition to interim and final injunctive relief. **I further agree that any arbitration agreement or requirement shall not restrict or limit the Company's ability to obtain injunctive relief pending a final arbitration decision.** I also agree that if the Company should pursue any legal action to enforce this agreement, the Company is entitled to recover from me its actual attorney fees and costs of litigation and/or arbitration.

(Exhibit **"B"** at ¶ 8a) (emphasis added).

28.    Defendant Romero's Agreement similarly provides:

REMEDY FOR INJUNCTIVE RELIEF.  Employee **acknowledges that Company shall be irreparably injured** if Employee violates the foregoing restrictions of Paragraphs 7, 8, 9 and 10, and that the damages for said violation will be difficult to assess.  Therefore the parties further agree that **the Company shall have the right <u>ex parte</u>, without any notice whatsoever to Employee to apply for and obtain an injunction from a court with jurisdiction over the said subject matter**, enjoining Employee from breaching said provisions of this Agreement.  .

(Exhibit "C" at ¶11) (emphasis added).

29.    Defendants resigned from HRBFA on January 10, 2006 and immediately joined a competitor securities firm, SunTrust Investment Services, Inc. ("SunTrust"), located in the nearby Virginia suburbs.

30.    HRBFA alleges, upon information and belief, that Defendants have wrongfully converted HRBFA customer information and are attempting to divert HRBFA customers to their new employer, SunTrust.

31.    Indeed, upon information and belief, Defendants have used HRBFA customer information to contact and/or solicit customers in violation of their Agreements.

32.    Accordingly, HRBFA alleges, upon information and belief, that Defendants prepared to engage in, are engaging in, and plan to continue to engage in, *inter alia*, the following acts:

(a)  removal and/or use of confidential HRBFA customer information for purposes other than doing the business of HRBFA, specifically including the names, addresses, telephone numbers, and/or other confidential financial information of the customers they serviced at HRBFA;

(b)  soliciting and/or contacting and/or preparing to solicit and contact HRBFA's clients to terminate their relationship with HRBFA and transfer their accounts to Defendants' new employer, SunTrust; and/or

(c)  other such acts contrary to the terms, conditions, and provisions of Defendants' Agreements and HRBFA guidelines and policies.

33.    Defendants' conduct was and is in furtherance of a scheme to obtain and to convert to personal use and gain the names, contact information and/or other confidential customer information used to conduct business at HRBFA, the trade secrets of HRBFA, and the goodwill generated, directly and indirectly, by their association with HRBFA, and to do so by means of, *inter alia*, solicitation of clients of HRBFA with whom Defendants had contact while in the employ of HRBFA.

34.    HRBFA believes and, therefore, avers that:

(a)    Defendants have possession or control of HRBFA confidential customer information, HRBFA proprietary information, and/or HRBFA trade secrets;

(b)    Defendants have improperly solicited and will continue to improperly solicit HRBFA accounts to divert the business of HRBFA customers from HRBFA to their new employer, SunTrust; and

(c)    Defendants will otherwise continue to engage in acts

constituting a breach of the terms of their HRBFA
contracts, a breach of their duty of loyalty, and other
tortious conduct, including conversion, misappropriation
and/or misuse of trade secrets and unfair competition.

## COUNT I

## INJUNCTIVE RELIEF

35.    The averments of Paragraphs 1 through 34 are incorporated by reference
herein with the same force and effect as if set forth in full below.

36.    By virtue of the foregoing, HRBFA has demonstrated a likelihood of
success on the merits and that a balancing of the equities favors the issuance of an injunction
against Defendants.

37.    Unless Defendants are temporarily and preliminarily enjoined from the
foregoing conduct, HRBFA will be irreparably harmed by:

a)        Disclosure of trade secrets, customer lists, and other confidential
information that is solely the property of HRBFA and its clients;

b)        Loss of confidentiality of the information contained in clients'
records, loss of confidentiality of clients' financial dealings, loss of confidence
and trust of clients, loss of goodwill, and loss of business reputation;

c)        Loss of personnel, damage to office stability, and a threat to the
enforcement of reasonable contracts;

d)        Present economic loss, which is unascertainable at this time, and future
economic loss, which is presently incalculable.

38.    HRBFA has no adequate remedy at law.

WHEREFORE, HRBFA respectfully requests that:

(1)        A Temporary Restraining Order and/or a Preliminary Injunction Order

issue immediately, enjoining Defendants, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of Defendants' new employer, SunTrust, until hearing and thereafter until further Order of this Court, from:

(a)    contacting , soliciting or calling upon, any person or entity that was a customer of HRBFA, whom Defendants serviced or whose name became known to Defendants, while employed with HRBFA (the "Customers"), for the purpose of or in connection with selling any products or services similar to or in competition with those offered by HRBFA (excluding members of Defendants' immediate family);

(b)    contacting, soliciting, or calling upon any person or entity that was not yet a client of HRBFA but was solicited by, or otherwise had business contact with, Defendants or other HRBFA agents or employees (the "Prospects") for the purpose of or in connection with selling any products or services similar to or in connection with those offered by HRBFA (excluding members of Defendants' immediate family);

(c)    using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the records of HRBFA, including, but not limited to, the names, addresses and financial information of HRBFA's Clients and Prospects;

(d)    destroying, erasing or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) in Defendant's possession or control which were obtained from or contain information derived from any HRBFA records.

which pertain to HRBFA Clients or Prospects, or which relate to any of the events alleged in the Complaint in this action;

(2)    Defendants, and anyone acting in concert or participation with Defendants, including Defendants' counsel and any agent, employee, officer or representative of Defendants' current employer, SunTrust, be further ordered to return to Plaintiff's counsel any and all records or information pertaining to Plaintiff's customers whether in original, copied, computerized, handwritten or any other form, and purge any such information from his or its possession, custody, or control, within 24 hours of notice to Defendants or their counsel of the terms of the Court's Order provided, however, that any information so purged shall be printed and saved to a Compact Disk or similarly accessible and readable recording device prior to purging and be returned to Plaintiff's counsel pursuant to this paragraph and consistent with paragraph (1) (c) above.

## COUNT II

## BREACH OF CONTRACT

39.    The allegations of Paragraphs 1 through 38 are incorporated herein by reference with the same force and effect as if set forth in full below.

40.    Defendants have violated, inter alia, their Agreements with HRBFA, attached hereto as Exhibits **"A", "B"** and "C".

41.    On information and belief, absent injunctive relief, Defendants will continue to violate their contractual obligations and HRBFA policies.

42.    As a consequence of the foregoing, HRBFA has suffered and will continue to suffer irreparable harm and loss.

COUNT III
**MISAPPROPRIATION OF TRADE SECRETS**
(D.C. Code §§ 48-501- - 48-510)

43.    The allegations of Paragraphs 1 through 42 are incorporated herein by reference with the same force and effect as if set forth in full below.

44.    The books and records of HRBFA, the confidential information contained therein, and especially the identity of HRBFA customers, including their names and addresses, financial statements, investment objectives, assets and/or securities held by these customers in their HRBFA accounts and other financial information, are trade secrets of HRBFA subject to protection under District of Columbia law.

45.    HRBFA's customer information is a compilation of information, including a listing of names, addresses and telephone numbers of HRBFA clients as well as HRBFA financial information, all of which is used in HRBFA's business and gives HRBFA an opportunity to obtain a competitive advantage over other competitors who do not know the contents of this customer list and additional customer related information.

46.    HRBFA has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including by having Defendants sign the Agreements, attached as Exhibits "**A**", "**B**" and "**C**" which expressly prohibit the use and disclosure of such information outside of HRBFA, as well as other procedures designed to maintain confidentiality and prevent improper disclosure.

47.    The foregoing conduct of Defendants constitutes a misappropriation and misuse of HRBFA's confidential, trade secret information in violation of District of Columbia law because Defendants have used and/or disclosed HRBFA's customer information for purposes other than doing the business of HRBFA, and have done so without HRBFA's consent

and despite the fact that Defendants' knowledge of this information was acquired by Defendants under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Defendants expressly owed to HRBFA as agents, employees and registered representatives of HRBFA.

48.    As a consequence of the foregoing, HRBFA has suffered and will continue to suffer irreparable harm and loss.

## COUNT IV

## TORT-CONVERSION

49.    The allegations of Paragraphs 1 through 48 are incorporated herein by reference with the same force and effect as if set forth in full below.

50.    The foregoing conduct of Defendants, and particularly Defendants' misuse of confidential HRBFA client information, constitutes a conversion of HRBFA's proprietary information and confidential business information.

51.    As a consequence of the foregoing, HRBFA has suffered and will continue to suffer irreparable harm and loss.

## COUNT V

## BREACH OF DUTY OF LOYALTY

52.    The allegations of Paragraphs 1 through 51 are incorporated herein by reference with the same force and effect as if set forth in full below.

53.    Defendants have violated the common law duty of loyalty arising under their employment contracts and relationship with HRBFA in that, while employed by HRBFA, Defendants secretly planned to leave the employ of HRBFA and schemed with others to deprive HRBFA of its clients, records, and trade secrets.

54.    As a consequence of the foregoing, HRBFA has suffered and will continue to suffer irreparable harm and loss.

## COUNT VI

## UNFAIR COMPETITION

55.    The allegations of Paragraphs 1 through 54 are incorporated herein by reference with the same force and effect as if set forth in full below.

56.    The foregoing conduct of Defendants constitutes an unfair method of competition.

57.    As a consequence of the foregoing, HRBFA has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing acts complained of in Counts II, III, IV, V and VI, HRBFA demands judgment in its favor and against Defendants for temporary and preliminary injunctive relief pending the outcome of expedited arbitration hearings on the merits to be held pursuant to Rule 10335(g) of the National Association of Securities Dealers Code of Arbitration Procedure.

Respectfully submitted,


By: _____

Robert C. Gill, Esquire
DC Bar No. 413163
SAUL EWING, LLP
1025 Thomas Jefferson Street, N.W.
Suite 425W
Washington, D.C. 20007
(202) 295-6600
(202) 295-6700 (facsimile)

Attorneys for Plaintiff
H&R Block Financial Advisors, Inc.

Of Counsel:

Christopher P. Stief
Saul Ewing LLP
Centre Square West, 38th Floor
1500 Market Street
Philadelphia, Pennsylvania 19102
(215) 972-1965
(215) 972-1941 (facsimile)