2000 Revised Edition

# FINANCIAL ADVISOR EMPLOYMENT
# AGREEMENT AND RESTRICTIVE COVENANTS

THIS AGREEMENT made this _2_ day of _December_, 20_03_, by and between H&R BLOCK FINANCIAL ADVISORS, INC. (Company) and ___Justin Romero___ (Employee).

For and in consideration of the covenants set forth, the parties agree as follows:

1. **EMPLOYMENT.** Company hereby agrees to employ Employee as a registered representative (stockbroker), and Employee hereby agrees to be so employed, pursuant to the following terms and conditions.

2. **DUTIES OF EMPLOYEE:**

   A. Employee shall devote his/her best efforts, full-time working exclusively, to advance the best interests of Company while Employee is employed by Company.
   B. Employee shall not hold any other employment nor shall he/she participate in any other business other than that of the Company. The foregoing shall not restrict Employee from investing in passive investments.
   C. Employee agrees to comply with and follow all of the operational policies, procedures, rules and regulations of Company in effect from time to time, and to comply with and follow all the rules and regulations of the New York Stock Exchange, Inc., and the National Association of Securities Dealers, Inc. and any other exchange or regulatory organization that Company may become a member or be subject to.
   D. Employee further agrees to comply with and follow all of the laws and regulations of the Federal government, including, but not limited to the Securities and Exchange Commission, and the state or states where Employee is registered governing the operation and performance of Company's business.
   E. Employee acknowledges and understands that Company, pursuant to the aforementioned laws, rules and/or regulations, is required to supervise Employee's conduct and activities and Employee agrees to cooperate with Company in its fulfillment of these obligations by providing any and all assistance, information, and documentation which Company may reasonably request.

3. **ASSIGNED ACCOUNTS.** From and after the date hereof, the Company may assign the accounts (the "Accounts") of specific customers to Employee under the following terms and conditions:

   A. Company shall always have the absolute and uncontrolled discretion, unilaterally:

      (1) To select the Accounts that Company shall assign to Employee.
      (2) To refrain from assigning any Accounts whatsoever to Employee.
      (3) To determine the quantity of the Accounts assigned to Employee.
      (4) To withdraw all of the Accounts, or any of them from Employee.
      (5) To transfer Employee to another office without any Accounts.

2000 Revised Edition

  B. The parties acknowledge that Employee has no claim to or property interest in any Accounts that the Company may assign to him/her.

    (1) If the Company withdraws all Accounts or any of them from Employee, Employee shall not have the right to any compensation related to said accounts; other than the compensation which he/she may have earned for services rendered to the Accounts prior to the withdrawal.

    (2) If Employee is assigned to another office, he/she shall not have the right to service the Accounts or "take" the Accounts with him/her; nor shall he/she have the right to any compensation related to the said Accounts; other than the compensation which he/she may have earned for service rendered to the Accounts prior to his/her transfer to the new office.

4. **COMPENSATION.** Company shall compensate Employee for the services he/she renders pursuant to this Agreement as follows:

  A. Company shall pay Employee a salary in the amount of $ __2-000.00__ per month.
  B. In addition, Company shall pay Employee a commission pursuant to the Schedule of Commissions periodically published by the Company.
  C. Company shall have the absolute and uncontrolled discretion, unilaterally to reduce or increase the said salary and/or the said commission schedule; provided, that the new rate of salary and/or compensation shall operate only prospectively commencing from and after a date to be determined by the Company, unilaterally, in the Company's absolute and uncontrolled discretion.

5. **REIMBURSEMENT FOR EXAMINATION EXPENSES.** Employee understands that the Company will pay all fees and expenses associated (I) with the examination(s) he/she is required to pass to receive and to maintain various securities licenses and/or registrations and (ii) with all continuing education requirements. If Employee fails to attend or to timely cancel any scheduled examination or continuing education session, Employee agrees to reimburse the Company for all fees and expenses incurred for the examination or session and agrees that the fees and expenses may be deducted from his/her compensation.

6. **TERMINATION.** THE EMPLOYEE OR THE COMPANY MAY TERMINATE EMPLOYEE'S EMPLOYMENT AT ANY TIME, WITHOUT CAUSE, AND WITHOUT NOTICE. Employee agrees that only the President of the Company has the authority (a) to make any agreement modifying the foregoing provisions terminating the Employee's employment at any time, without cause and without notice or (b) to enter into any agreement for the employment of Employee for any specified period of time; provided that said agreement will be valid and effective only if the agreement is in writing, signed by the President of the Company, and witnessed in writing by another officer of the Company. The Employee further acknowledges that no person other than the President of the Company has the right, or the authority to modify the foregoing provision terminating the Employee's employment at any time without cause and without notice.

7. **CONFIDENTIALITY OF INFORMATION.** Employee acknowledges and agrees that during the course of Employee's employment by Company, Employee will receive, have access to, and create documents, records and information of confidential and proprietary nature to Company and customers, affiliates, and subsidiaries of Company including, but not limited to, the names and

2

2000 Revised Edition

addresses of Company's customers and prospective customers, training and operational manuals, information concerning Company's customers' general financial position and securities portfolio as ordered through Company, research, policies, plans, and systems, all of which would not be readily available to Employee except for the Employee's employment relationship with the Company as a stockbroker.

Employee further acknowledges, understands, and agrees that such information and similar data is not generally known to the trade, is of a confidential nature, is an asset of Company, and to preserve Company's goodwill must be kept strictly confidential and used only in the conduct of its business. Employee agrees that Employee will not use, disclose, copy or permit the disclosure of any of the aforementioned information in any manner whatsoever except in accordance with the duties and in the course of Employee's employment with Company, and upon the termination of Employee's employment with Company, only with the written permission of Company. Immediately upon termination of Employee's employment, Employee will return to Company any and all of the written or recorded information described in this paragraph, including all copies and reproductions thereof, in Employee's possession.

8. <u>NO CLAIM OR INTEREST IN CUSTOMER'S ACCOUNTS AFTER TERMINATION.</u>
The parties further agree that:

   A. Employee has no interest in or right or claim to (I) any customer or customer's account or (ii) commissions or compensation related to transactions made by or on behalf of the customer after the termination of Employee's employment; even though the customer may have been acquired because of the sole efforts of Employee after the commencement of Employee's employment.
   B. The sole compensation to which Employee shall be entitled after termination of his/her employment shall be Employee's commissions for transactions completed prior to the termination of Employee's employment.

9. <u>COVENANT NOT TO SERVE COMPANY'S CUSTOMERS AFTER TERMINATION.</u>
Employee expressly agrees that, as a result of the confidential documents, records and information employee will receive, com in contact with, create, or have access to during the term of Employee's employment with Company, as more fully set forth in Section 7 of this Agreement, which documents, records and information are furnished or created as a necessary and integral part of Employee's employment by company, Employee shall not directly or indirectly, for a period of one (1) year after termination of Employee's employment with Company, perform brokerage services for or accept brokerage business from, or assist any person, firm, partnership, corporation, or other entity to perform brokerage services for or accept brokerage business from, any customers having accounts with Company, with whom Employee had any contact whatsoever during the term of Employee's employment with Company.

   A. Employee shall not contact or solicit any of said customers for a period of one (1) year.
   B. Employee shall not notify any of said customers of the termination of Employee's employment.
   C. Employee shall not notify any of said customers where Employee is employed at any time during said period of one (1) year. In the event said customers should request that Employee serve said customers, or any of them during said period of one (1) year, Employee shall refuse to do so.

3

2000 Revised Edition

D. Notwithstanding the foregoing, should Employee become employed elsewhere in the securities industry, nothing contained in this Agreement shall preclude Employee from soliciting customers' accounts that were Employee's customers prior to the time that he/she became employed by the Company; provided that a written list of said customers shall be provided to Company not later than ten (10) days after this Agreement shall be signed by the parties and that the list of Customers shall be initialed by an officer of Company. Employee shall be precluded from soliciting the customers on list in the event that the list is not provided by Employee to Company within the period of ten (10) days; and if Employee's copy of the list is not initialed by an officer of Company.

10. **COVENANT NOT TO SOLICIT EMPLOYEES.** Employee agrees that during and after termination of Employee's employment with the Company, he/she will not directly or indirectly encourage, solicit, or otherwise attempt to persuade any employee of the Company to leave the employ of the Company, to breach any employment agreement with the Company, or to violate any policy or procedure of the Company.

11. **REMEDY FOR INJUNCTIVE RELIEF.** Employee acknowledges that Company shall be irreparably injured if Employee violates the foregoing restrictions of paragraphs 7, 8, 9 and 10, and that the damages for said violation will be difficult to assess. Therefore the parties further agree that the Company shall have the right ex parte, without any notice whatsoever to Employee to apply for and obtain an injunction from a court with jurisdiction over the said subject matter, enjoining Employee from breaching said provisions of this Agreement. The parties acknowledge that the Third Judicial Circuit Court for the County of Wayne, State of Michigan or the United States District Court for the Eastern District of Michigan shall have jurisdiction and venue shall be proper to grant such injunctive relief..

12. **NOTICE.** Whenever, under this Agreement, provision is made for notice of any kind upon a party hereto, said notice shall be in writing and shall either be served personally upon said party or mailed to said party by registered or certified mail to his/her last known post office address. Said notice shall be conclusively presumed to be served upon the party to be notified at the time it is mailed, enclosed in an envelope with postage prepaid, including fees for registration or certification, and addressed to said party at his/her last known address. The current addresses of the parties are as follows:

EMPLOYER:
751 Griswold Avenue
Detroit, Michigan 48226

EMPLOYEE:
Justin Romero
9936 Hellingly Place
Gaithersburg MD 20886

13. **BENEFITS.** This Agreement shall inure to the benefit of and be binding upon the parties and their respective heirs, personal representatives, successors and assigns.

14. **FINAL DRAFT.** This Agreement completely and entirely supersedes any and all previous agreements entered into between the parties hereto including, by way of example and not limitation, any and all prior employment agreements.

15. **WAIVER.** One or more waivers of any covenant or condition by any of the parties hereto

4

2000 Revised Edition

shall not be construed as a waiver of a future breach of the same covenant or condition.

16. **REMEDIES NOT EXCLUSIVE.** It is agreed that each and every right, remedy and benefit provided by this Agreement shall be cumulative and shall not be exclusive of any other of said rights, remedies and benefits, or of any other right, remedy and benefit allowed by law.

17. **CATCHLINE HEADINGS.** The catchline headings of any of the foregoing provisions shall not be a part of the provision itself or be used to construe the terms of the provisions more broadly or more narrowly than the text would indicate.

18. **SEVERABILITY.** The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision. The invalid or unenforceable provision shall be stricken and the agreement shall continue in full force and effect as if the said invalid or unenforceable provision had no appeared therein.

19. **COUNTERPARTS.** This Agreement may be executed in any number of counterparts, any one of which shall be considered an original. All counterparts shall be but one agreement, which shall be binding upon each party who executes any counterpart, an dupon the heirs, administrators and assigns of such party.

20. **PRONOUNS.** The masculine, feminine and neuter pronoun, as well as the singular and plural pronouns may be used interchangeably.

21. **CHOICE OF LAW.** This Agreement and its enforcement shall be governed by the laws of the State of Michigan, without regard to its choice of law provisions.

22. **INDEMNIFICATION.** Employee shall indemnify and hold harmless the Company from any judgments or awards rendered against Company, or settlements entered into by the Company arising out of any claim or action instituted by a customer relating to any act or omission of Employee in derogation or breach of any Employee's agreements, warranties or obligations as set forth herein. Such indemnification shall include Employee's liability to Company for all of its costs, expenses, and reasonable attorneys' fees incurred in connection with the defense of any such claim or action. Employee further agrees to reimburse Company for all costs, expenses and reasonable attorneys' fees incurred by Company in enforcing the provisions of this Agreement or otherwise by reason of Employee's breach of any provision of this Agreement.

23. **COOPERATION IN INVESTIGATIONS.** Employee shall report immediately to Company's President, Compliance Director, or their designee any customer Complaint, litigation or arbitration collectively ("Complaint"), whether or not such Complaint relates, directly or indirectly, to any alleged act or omission of Employee and whether or not Employee believes such Complaint to be meritorious. Employee shall cooperate fully with Company in the investigation, evaluation and resolution of a Complaint which alleges any impropriety whatsoever by Employee, whether involving breach of any duty, regulation or

2000 Revised Edition

otherwise. Where Company and Employee are unable to agree upon the manner in which a Complaint should be resolved (whether through informal settlement or vigorous defense in formal adversary proceedings), then the determination of Company shall control. Nothing contained herein shall be construed to limit or impair Company's right s as to itself to terminate any action or resolve any Complaint or any dispute with a customer by way of settlement or otherwise without prior consultation with Employee.

24. <u>SURVIVABILITY OF CERTAIN PROVISIONS.</u> The terms and conditions of Sections 5. 7,8,9,10.11,22 and 23 shall survive the date of Employee's employment relationship with Company.

25. <u>LIMITATIONS OF ACTIONS.</u> Employee agrees that any cause of action that he/she may initiate relating to any terms or conditions of his/her employment or the termination of his/her employment with the Company, whether such claims are contractual, equitable or statutory in nature, including without limitation those causes of action set forth in Section 26 below, shall be commenced within 300 days of the date of termination of my employment with the Company, whether such terminations initiated by myself or the Company. This provision shall supersede all other limitation of actions that may exist in law or equity. Notwithstanding the foregoing, the 300-day limitation of actions shall not apply to any action, lawsuit or arbitration to enforce the provisions of Sections 7, 8, 9 and 10 of this Agreement.

26. <u>ARBITRATION AGREEMENT.</u> The parties also agree to arbitrate any dispute, claim or controversy that may arise between the undersigned employee and the Company, including any controversy arising out of the employee's employment or termination of employment with the Company, including but not limited to claims of race, color, religion, sex, national origin or any other form of unlawful discrimination prohibited by any applicable federal, state or local civil rights law, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Standards Act or any other federal, state or local equal employment opportunity law, or any other controversy that is reuired to be arbitrated under the fules, constitution, or by-laws of the NYSE and/or the NASD as may be amended from time to time. This arbitration shall be conducted pursuant to the respective rules and regulations of the NYSE, NASD, or equivalent arbitration forum, then in effect, as selected by the Company. Any award resulting therefrom may be entered as a judgment by a court of competent jurisdiction and venue, which the parties agree shall include those courts described in Section 11. The foregoing shall not limit the Company from seeking its equitable remedies, as set forth in Section 11, before a court of competent jurisdiction and venue, which the parties agree shall include those courts described in Section 11. The parties also agree that seeking (and obtaining) injunctive or equitable relief as set forth in Section 11, shall not waive either party's rights to subsequently seek and compel arbitration as set forth in this Section.

The Company makes the following disclosures with respect to Arbitration:

    A. Arbitration is final and binding on the parties.
    B. The parties are waiving their right to seek remedies in court, including the right to a jury trial.

2000 Revised Edition

C. Pre-arbitration discovery is generally more limited than and different from court proceedings.

D. The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

E. The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry.

F. Any arbitration award may be confirmed in a court and a judgment entered for enforcement and collection.

BY THEIR SIGNATURES BELOW, THE UNDERSIGNED PARTIES ACKNOWLEDGE

2000 Revised Edition

THAT: (I) THEY HAVE HAD SUFFICIENT OPPORTUNITY TO, AND HAVE CAREFULLY READ EACH PROVISION OF THIS AGREEMENT, WHICH CONTAINS A PREDISPUTE ARBITRATION CLAUSE (SECTION 26) AND A LIMITATION OF ACTION CLAUSE (SECTION 25); (II) THEY UNDERSTAND EACH PROVISION; (III) THEY ARE NOT RELYING UPON ANY REPRESENTATIONS OR PROMISES THAT ARE NOT SET FORTH IN THIS AGREEMENT; (IV) THE PROVISIONS OF THIS AGREEMENT ARE STANDARD AND COMMON IN THE SECURITIES INDUSTRY; AND (V) THEY ARE FREELY AND VOLUNTARILY SIGNING THIS AGREEMENT AND INTEND TO BE BOUND BY IT.

EMPLOYEE

_____
Employee Signature

_____
Print Name: Justin Romero

H&R BLOCK FINANCIAL ADVISORS, INC.

_____
Signature of Authorized Headquarter Officer

_____
Print Name of Authorized Headquarter Officer: Steven T. Belloli

_____
Print Title of Authorized Headquarter Officer: Northeast RD - H&BFA

8