## STOCKBROKER TRAINEE EMPLOYMENT
## AGREEMENT AND RESTRICTIVE COVENANTS

I, _George Shirley_, the undersigned employee, make the following agreement with OLDE Discount Corporation, its successors and assigns ("the Company").

1. **Agreement to be Effective Throughout Employment and After Termination of Employment.**

    a. **Effective Date and Duration:** I understand that this Agreement is effective as of _September 8_, 19_97_, and agree that in order to carry out the intent of this Agreement the obligations under this Agreement shall continue after the termination of my employment with the Company.

    b. **Agreement Applicable To All Employment Capacities:** I agree to be bound by the terms and conditions of this Agreement whether employed by the Company as a Stockbroker Trainee, Municipal Securities Representative, Stockbroker or in any other capacity.

2. **Employment Conditions and Obligations; Employment "at will".**

    a. **Employment At Will:** I understand that I will be employed by the Company for an indefinite term, and that the Company will compensate me in such amount and upon such terms as the Company may determine from time to time. I understand and agree that either I or the Company may terminate the employment relationship at any time, with or without notice, for any reason or for no reason, with or without cause.

    b. **Duties and Responsibilities to the Company:** I understand that my duties and responsibilities shall be established by the Company from time to time, and I agree to abide by all such directions and all statements of policy or procedure that the Company may issue from time to time. During my employment, I shall use my best efforts and entire business time and attention to advance the interests of the Company.

    c. **Regulatory Responsibilities:** I understand that the Company is a member of the New York Stock Exchange ("NYSE") and the National Association of Securities Dealers, Inc. ("NASD"), and I shall abide by their rules, constitutions or by-laws as may be amended from time to time, and by the rules, constitutions, or by-laws of other organizations of which the Company is or may become a member, and by all Federal and State Securities laws, rules and regulations. I agree to immediately provide written notification to both a senior officer of the Company and the Director of Compliance if I become aware that any employee of the

1

Company violates regulatory organization requirements or rules, or securities laws, rules or regulations of any nature.

d.  Initial Training and Licensing:   I understand that I will initially receive training in Municipal Securities and will be required to pass the Municipal Securities Representative Examination. I understand and agree that after I satisfactorily complete the Company's training program and become licensed to sell municipal securities after passing the necessary examinations, the Company may, in its discretion, employ me as a Municipal Securities Representative.

e.  Subsequent Training and Licensing: I agree that while performing the functions of a Municipal Securities Representative, at the sole discretion of Company, I may be permitted to train and take the appropriate exams to become a licensed stockbroker. I agree that after I satisfactorily complete the Company's stockbroker training program and become licensed as a stockbroker, the Company may, in its sole discretion, employ me as a registered stockbroker.

f.  Reimbursement for Examination Expenses: I   understand   that   the Company will pay all fees and expenses associated (i) with the examination(s) I am required to pass to receive and to maintain various securities licenses and/or registrations and (ii) with all continuing education requirements. If I fail to attend or to timely cancel any scheduled examination or continuing education session, I agree to reimburse the Company for all fees and expenses incurred for the examination or session and I agree that the fees and expenses may be deducted from my compensation.

g.  Deduction of Losses: I agree that the Company may, in its sole discretion, deduct from my compensation any losses or fines, or any portion thereof, which the Company reasonably believes to be due to my negligence or misconduct. I agree that this determination will be made by the Business Conduct Committee or a senior officer of the Company, and will be final and binding.

h.  Restrictions on Outside Business and Accounts: I agree that I shall not directly or indirectly engage in or be associated with any outside commercial or business duties or pursuits without written consent from the Company's Compliance Director. I agree not to open or maintain any brokerage accounts outside of the Company for the purpose of trading in stocks, bonds, options, or any other securities products (except Mutual Funds and Money Markets) without written consent from the Compliance Director. I agree to notify the Compliance Director of the existence of any such brokerage accounts and promptly close or transfer same to the

Company at the Compliance Director's direction. I further agree to comply with all employee and employee-related trading restrictions.

    i.    Restrictions on Personal Transactions With Customers: I agree that I shall not enter into personal business transactions with customers or prospective customers of the Company without the prior <u>written</u> permission of the Company, signed by the President or Compliance Director of the Company, unless such customer is my relative by blood or marriage.

    j.    Restrictions of Gifts or Loans from Customers: I agree that I shall not seek or receive money or property in the form of a loan, a gift or otherwise, from any customer or prospective customer without the prior <u>written</u> permission of the Company, signed by the President or Compliance Director of the Company, unless such customer is my relative by blood or marriage.

    k.    Restrictions on Media Contact: I agree not to talk or write to the media about any aspect of the Company's business, and I agree that any media inquiry that I receive shall be referred to a senior officer of the Company.

3. **Restrictions on Access to, Use and Dissemination of Proprietary Information.**

    a.    Description of Proprietary Information: I acknowledge that during my employment with the Company I will come into possession of trade secrets or other confidential and proprietary information of the Company (all of which will be referred to in this Agreement as "proprietary information"), including by way of example, and not limitation, the identity of customers and prospective customers of the Company; customer files and detailed information concerning customer needs, requirements, and financial position; proposals designed to meet customer or prospective customer requirements, corporate planning, research, training materials, pricing, costs and other financial information and records of the Company, and Company memoranda, whether or not marked as confidential, in any form, paper, magnetic, optical, or <u>notes</u> regarding same, summaries, books, blotters. I acknowledge that this proprietary information is highly confidential to the Company, and could not, without great expense and difficulty, be obtained or duplicated by others who have not been able to acquire such information by virtue of employment with the Company.

    b.    Restrictions on Disclosure and Use of Proprietary Information: I agree that during and after my employment with the Company, unless I first obtain the prior <u>written</u> consent of the President of the Company, I shall

3

not communicate or disclose any of the Company's proprietary information, directly or indirectly to any person or firm, or use any of the Company's proprietary information in any way at any time, whether or not such information was developed or obtained by me. However, I understand that I may, where so authorized and approved, use such proprietary information to further my employment duties with the Company, but I agree that I shall retain all such proprietary information in strict confidence for the sole benefit of the Company.

c. <u>Restrictions on Removal of Proprietary Information</u>: I agree that I shall not remove any proprietary information, or any other property of the Company, from the Company's premises without prior express <u>written</u> permission from a senior officer of the Company.

d. <u>Return of Proprietary Information and Other Property</u>: I agree that, upon termination of my employment with the Company, I will return all proprietary information and all other records, documents and other written, printed, photographic, magnetic, electronic, optical or physical materials of any type that belong to or pertain to the Company, including, without limitation, printouts, disks, tapes, customer documents, customer plans, writing and memoranda, blotters, notebooks, journals, calculations, billing information, financial information, all such data showed on electronic equipment, and all other documents relating to the Company then in my possession or under my control and I agree that I shall not make or retain any copies or extracts, including handwritten summations of all such records.

4. **Restrictions on Service to Customers of the Company.**

a. <u>Covenant not to Service</u>: I acknowledge and agree that I have no interest in, right to or claim to any customer or customer's account or any commissions or compensation generated therefrom. Therefore, in consideration for the Company's employing me, subject to termination as set forth in section 2a; compensating me; providing me with employment related benefits; training me; sponsoring me in securities examination(s); registering me; licensing me; providing me with office facilities and sales support; executing, processing and clearing transactions; providing research and investment recommendations; and other good and valuable consideration, the separate and collective adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, I agree that during the period of my employment with the Company and for a period of two (2) years after my employment with the Company terminates, whether such termination is voluntary or involuntary, I shall not, directly or indirectly, either individually or on behalf of another person or firm, call upon, solicit, sell (either take a buy

4

or sell order from) or attempt to sell any products or services similar to or in competition with those offered by the Company to any person or firm that was a customer of the Company at any time during my employment with the Company, or that was solicited by the Company or otherwise had any contact with the Company during the six month period preceding my termination of employment with the Company.

    b.    <u>Enforceability of Covenant to Full Extent of Law</u>: If any provisions of this Section 4 are ever found by a court, arbitration panel or other tribunal to be unreasonable, the parties agree that this Section shall be enforced to the extent that it is found to be reasonable by such court, panel or tribunal.

5. **Agreement Not to Solicit Employees of the Company.**

I agree that after termination of my employment with the Company, I will not directly or indirectly encourage, solicit, or otherwise attempt to persuade any employee of the Company to leave the employ of the Company, to breach any employment agreement with the Company, or to violate any policy or procedure of the Company.

6. **Reimbursement to the Company for Training Costs.**

I acknowledge that the Company will spend significant amounts of time and expense training and educating me with the expectation that this investment in training and educating me will be recovered by the Company over time through my service to the Company. I therefore agree that if I terminate my employment (or provoke my termination for cause) within two (2) years after the date hereof, I shall pay to the Company upon demand, at the Company's discretion, up to $10,000 as determined below, upon demand, to compensate the Company for the costs and expenses in training me. I agree that the amount I shall be obligated to pay to the Company shall be determined according to the following schedule:

    a.    Termination within six months of the date of this Agreement - $10,000.

    b.    Termination between six and twelve months of the date of this Agreement - $7,500.

    c.    Termination within twelve and eighteen months of the date of this Agreement - $5,000.

    d.    Termination within eighteen and twenty-four months of the date of this Agreement - $2,500.

7. Interpretation and Modification of Agreement.

   a. <u>Entire Agreement; Binding Effect</u>: This Agreement contains the entire agreement of the parties, and any and all prior agreements, representations, or promises are superseded by and/or merged into this Agreement. The undersigned parties have entered into this Agreement in good faith, and fully intend to be bound by its terms. If any clauses conflict, the clauses in <u>this</u> agreement shall govern.

   b. <u>Restrictions on Modifications Required</u>: I understand that to be effective and binding on the Company, any modification of or amendment to this Agreement must be made in <u>writing</u> and signed by the President of the Company, and must <u>specifically</u> refer to this Agreement, and must specifically indicate that the writing is a modification of or amendment to this Agreement. I understand this requirement authorizing modification or amendment only by the President, in writing, may be changed only by written resolution of the Company's board of directors.

   c. <u>Survival and Severability of Provisions</u>: I understand that each provision in this Agreement is separate. I agree that in order to carry out the intent of this Agreement, the obligations under this Agreement shall survive the termination of my employment with the Company. I agree that if any part of this Agreement is held by any court, arbitration panel or tribunal to be invalid or unenforceable, the remaining portions shall remain in effect.

   d. <u>Agreement Not Construed Against The Company</u>: I acknowledge that although this Agreement was drafted by the Company, it accurately reflects my intent and understanding, and I agree that it shall not be construed against the Company if there is any dispute over the meaning or intent of any of its provisions.

   e. <u>**AGREEMENT REVIEWED AND UNDERSTOOD**</u>: **BY THEIR SIGNATURES BELOW, THE UNDERSIGNED PARTIES ACKNOWLEDGE THAT (I) THEY HAVE HAD SUFFICIENT OPPORTUNITY TO, AND HAVE, CAREFULLY READ EACH PROVISION OF THE AGREEMENT, (II) THEY UNDERSTAND EACH PROVISION, (III) THEY ARE NOT RELYING UPON ANY REPRESENTATIONS OR PROMISES THAT ARE NOT SET FORTH IN THIS AGREEMENT, AND (IV) THEY ARE FREELY AND VOLUNTARILY SIGNING THIS AGREEMENT AND INTEND TO BE BOUND BY IT.**

8. **Remedies for Breach, Injunctive Relief, Choice of Law, Arbitration, Forum Selection Provisions.**

   a. <u>Injunctive Relief and Attorneys Fees</u>: I agree that the Company would be irreparably injured in its business and would not have an adequate remedy at law if I were to breach Sections 3, 4, or 5 of this Agreement. I therefore agree that, the Company will be entitled to a temporary restraining order, preliminary or permanent injunction, (a) restraining me from disclosing or using any proprietary information of the Company, as described in Section 3, soliciting, rendering services or making sales to any client in violation of Section 4, or from soliciting or improperly contacting employees of the Company in violation of Section 5, or (b) requiring me to return to the Company proprietary information or other property pursuant to Section 3. I agree that the Company's remedies in the event of any such breach or violation by me would be cumulative and that the Company could also seek damages and other equitable relief in addition to interim and final injunctive relief. I further agree that any arbitration agreement or requirement shall not restrict or limit the Company's ability to obtain injunctive relief pending a final arbitration decision. I also agree that if the Company should pursue any legal action to enforce this agreement, the Company is entitled to recover from me its actual attorney fees and costs of litigation and/or arbitration.

   b. <u>Forum for Injunctive Action</u>: I agree that the Company shall be entitled to commence litigation to obtain injunctive relief described in Section 8a in the Third Judicial Circuit Court for the County of Wayne, State of Michigan or the United States District Court for the Eastern District of Michigan, provided such court has subject matter jurisdiction over me and proper venue.

   c. <u>Choice of Law and Arbitration Agreement</u>: This Agreement and its enforcement shall be governed by the laws of the State of Michigan. The parties agree to arbitrate any dispute, claim or controversy that may arise between the undersigned employee and the Company, including any controversy arising out of the employee's employment or termination of employment with the Company, that is required to be arbitrated under the rules, constitution, or by-laws of the NYSE and/or the NASD as may be amended from time to time. This arbitration shall be conducted pursuant to the respective rules and regulations of the NYSE and/or the NASD then in effect. Any award resulting therefrom may be entered as a judgment by any court of competent jurisdiction. The foregoing shall not limit the Company from seeking its equitable remedies, as set forth in Section 8a, before a court with subject matter jurisdiction including those described in Section 8b. The parties also agree that seeking (and obtaining) of

7

injunctive or equitable relief as set forth in Section 8a, shall not waive either party's rights to subsequently seek and compel arbitration as set forth in this Section.

OLDE hereby makes the following disclosures with respect to arbitration:

A. Arbitration is final and binding on the parties.
B. The parties are waiving their right to seek remedies in court, including the right to a jury trial.
C. Pre-arbitration discovery is generally more limited than and different from court proceedings.
D. The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
E. The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

d. <u>Waiver</u>: Failure of the Company to insist upon compliance or to take action to ensure compliance with any provision(s) of this Agreement at any time, under any set of circumstances shall not operate to waive or modify the provision(s) or in any manner render it unenforceable as to any other time or any other occurrence, whether or not the circumstances are the same.

I have read this entire Agreement carefully, I understand it and intend to be bound by it.

_____
Employee Signature

George Shirley

4400 Lee Hwy # 314

Arlington  VA  22207
(print name and address)

8

I make this Agreement on behalf of the Company.

                                      OLDE DISCOUNT CORPORATION

                            By: _____Dan Patterson_____
                                      Daniel S. Patterson
                                      Its: Senior Vice President

Dated: _____9/11/97_____

s:\share\legal\beth\agreemen\train.sam

9