<u>STOCKBROKER TRAINEE AGREEMENT</u>

THIS AGREEMENT made this _18th_ day of _May_, 1994 by and between OLDE DISCOUNT CORPORATION ("Company") and _J. Derek Majkowski_, ("Employee").

RECITALS:

Employee desires to be employed by Company as a stockbroker trainee; to receive specialized training and instruction from Company, and to obtain the knowledge and skill necessary to perform the duties of a registered stockbroker; which knowledge and skill Employee does not presently possess.

Company desires to employ Employee and to educate, train and instruct Employee in the duties of a stockbroker to prepare him/her for the examination which he/she must pass in order to become a stockbroker.

NOW, THEREFORE, for and in consideration of the covenants hereinafter set forth, the parties hereby agree as follows:

1. <u>EMPLOYMENT.</u> Pursuant to the terms and conditions hereinafter set forth:

   A. Company hereby agrees to employ Employee as a stockbroker trainee; and employee hereby agrees to be so employed.

   B. After employee satisfactorily completes Company's training program and becomes licensed to sell securities after passing the necessary examinations, company may, in its discretion, employ Employee as a registered stockbroker; in which event

1

the employment relationship between Company and stockbroker shall also be governed by the terms and conditions of this Agreement hereinafter set forth.

2. **DUTIES OF EMPLOYEE.**

    A. While a trainee, Employee agrees to work diligently and exclusively in Company's registered stockbroker training program in preparation for examinations administered by the New York Stock Exchange and the National Association of Securities Dealers, Inc.

    B. Upon becoming a registered stockbroker, Company, in its discretion, may employ employee as a registered stockbroker.

    C. Employee shall devote his/her best efforts, full-time, working diligently and exclusively to advance the best interests of the Company.

    D. Employee shall not hold any other employment nor shall he/she participate in any other business other than that of the Company. The foregoing shall not restrict Employee from investing in passive investments.

    E. Employee agrees to comply with and follow all of the operational policies, procedures, rules and regulations of the Company in effect, rules and regulations of the Company in effect from time to time, and to comply with and follow all of

2

the rules and regulations of the New York Stock Exchange, Inc., and the National Association of Securities Dealers, Inc., and any other exchange or regulatory organization of which Company may become a member or to which Company may become a member or to which Company may be subject.

F. Employee further agrees to comply with and follow all of the laws and regulations of the Federal Government and the state or states where Employee is registered governing the operation and performance of Company's business.

G. Employee acknowledges and understands that Company, pursuant to the aforementioned laws, rules and/or regulations, is required to supervise Employee's conduct and activities and Employee agrees to cooperate with Company in its fulfillment of these obligations by providing any and all assistance, information, and documentation which Company may reasonably request.

3. <u>COMPENSATION.</u> Company shall compensate Employee for the services he/she renders pursuant to this Agreement as follows:

A. Initially: Company shall pay Employee a salary in the amount of $ 1,000 per month until Employee passes his "Series 7", "Series 63" examinations to enable him/her to become a registered stockbroker.

3

  B. Passing the Examinations: When Employee passes the said examinations, Company shall increase his/her said salary $200 per month; which shall be paid him/her thereafter, as long as he/she continues to be an Employee of the Company.

  C. Stockbroker: In the event that Company shall, in its discretion, employ Employee as a stockbroker, Company shall pay Employee while he/she is a stockbroker employed by the Company a commission pursuant to the Schedule of Commissions periodically published by the Company.

  D. Whenever the Company shall desire, Company shall have the absolute and uncontrolled discretion, unilaterally (a) to reduce or increase the salary hereinabove described in paragraph 3A, 3B and 3C and (b) to reduce, increase, or eliminate entirely the said commissions hereinabove described in paragraph 3C; provided that the new rate of salary and/or commission shall operate only prospectively, commencing from and after date to be determined by the Company, unilaterally, in the Company's uncontrolled discretion.

4. TERMINATION. The Employee or the Company may terminate Employee's employment at any time, without cause, and without cause, and without notice.

Employee agrees that only the President of the Company has the authority (a) to make any agreement modifying the foregoing provision terminating the Employee's

4

employment at any time, without case and without notice or (b) to enter any agreement for the employment of Employee for any specified period of time; provided that said agreement will be valid and effective only if the agreement is in writing, signed by the President of the Company, and witnessed in writing by another officer of the Company.

The Employee further acknowledges that no person other than the President of the Company has the right, or the authority to modify the foregoing provision terminating the Employee's employment at any time without cause and without notice.

5.  **REIMBURSEMENT TO THE COMPANY.**    Employee further acknowledges that Company will spend significant amount of time and money in training and educating Employee.

If Employee terminates his/her employment within one (1) year after the date hereof, he/she shall pay Company the sum of $5,000.00, upon demand, to compensate Company for the costs and expenses expended in training Employee.

6.  **CONFIDENTIALITY OF INFORMATION.** Employee acknowledges and agrees that during the course of Employee's employment by Company, Employee will receive, have access to, and create documents, records, and information of confidential and proprietary nature to Company and customers, affiliates, and subsidiaries of Company including, but not limited to, the names and addresses of Company's customers and prospective customers, training and operational manuals, information concerning Company's customers' general financial position and securities portfolio as ordered through Company, research, policies, plans, and systems, all of which would not be readily available to Employee except for Employee's employment relationship with Company as a stockbroker. Employee further

5

acknowledges, understands, and agrees that such information and similar data is not generally known to the trade, is of a confidential nature, is an asset of Company, and to preserve Company's goodwill must be kept strictly confidential and used only in the conduct of its business. Employee agrees that Employee will not use, disclose, copy or permit the disclosure of any of the aforementioned information in any manner whatsoever except in accordance with the duties and in the course of Employee's employment with Company and upon the termination of Employee's employment with Company, only with the written permission of Company. Immediately upon termination of Employee's employment, Employee will return to Company any and all of the written or recorded information described in this paragraph, including all copies and reproductions thereof, in Employee's possession.

7. <u>NO CLAIM OR INTEREST IN CUSTOMER'S ACCOUNTS AFTER TERMINATION</u>. The parties further agree that:

   A. Employee has no interest in or right or claim to (i) any customer or customer's account or (ii) commissions or compensation related to transactions made by or on behalf of the customer after the termination of Employee's employment; even though the customer may have been acquired because of the sole efforts of Employee after the commencement of Employee's employment.

   B. The sole compensation to which Employee shall be entitled after termination of his employment shall be Employee's commissions for transactions completed prior to the termination of Employee's employment.

6

8. <u>COVENANT NOT TO SERVE COMPANY'S CUSTOMERS AFTER TERMINATION</u>. Employee expressly agrees that, as a result of the confidential documents, records and information employee will receive, come in contact with, create, or have access to during the term of Employee's employment with Company, as more fully set forth in Paragraph 5 of this Agreement, which documents, records and information are furnished or created as a necessary and integral part of Employee's employment by Company, Employee shall not directly or indirectly, for a period of three (3) years after termination of Employee's employment with Company, perform brokerage services for or accept brokerage business from, or assist any person, firm, partnership, corporation, or other entity to perform brokerage services for or accept brokerage business from, any customers having accounts with Company, with whom Employee had any contact whatsoever during the term of Employee's employment with Company.

    A.    Employee shall not contact or solicit any of said customers for a said period of three (3) years.

    B.    Employee shall not notify any of said customers of the said termination of Employee's employment.

    C.    Employe shall not notify any of said customers where Employee is employed at any time during said period of three (3) years.

In the event said customers should request that Employee serve said customers, or any of them during said period of three (3) years, Employee shall refuse to do so.

9.   **COVENANT NOT TO COMPETE.**   For a period of one (1) year from and after the termination of Employee's employment, Employee shall not, within a radius of fifty (50) miles of any Company office at which Employee was ever employed as a stockbroker, directly or indirectly compete with the Company; and shall therefore not be employed within said area as a stockbroker for any broker-dealer, or by any entity engaged in the purchase or sale of securities for customers.

10.   **REMEDIES.** Employee acknowledges that Company shall be irreparably injured if Employee violates the foregoing restrictions of Paragraph 5 and/or Paragraph 8; and that the damages for said violation will be difficult to assess. Therefore the parties further agree that Company shall have the right ex parte, without any notice whatsoever to Employee to apply for and obtain an injunction from the court with jurisdiction over the said subject matter, enjoining Employee from breaching the said provisions, or any of them.

The parties further agree that in the event of litigation arising from a breach of any of the provisions of paragraphs 6, 8 or 9, or any of them, Company shall be entitled to recover, in addition to damages and injunctive relief, all costs incurred including reasonable attorney's fees.

11.   **NOTICE.** Whenever, under this Agreement, provision is made for notice of any kind upon a party hereto, said notice shall be in writing and shall either be served personally upon said party or mailed to said party by registered or certified mail to his/her last known post office address.

Said notice shall be conclusively presumed to be served upon the party to be notified at the time it is mailed, enclosed in an envelope with postage prepaid, including fees for registration or certification, and addressed to said party at his/her last known address.

The current addresses of the parties are as follows:

### EMPLOYER:

751 Griswold Avenue

Detroit, Michigan 48226

### EMPLOYEE:

*10570 Main St Apt. B413*

*Fairfax, VA 22030*

12. **BENEFIT.** This Agreement shall inure to the benefit of and be binding upon the parties and their respective heirs, personal representatives, legal representatives, successors and assigns.

13. **FINAL DRAFT.** This Agreement completely and entirely supersedes any and all previous agreements entered into between the parties hereto including, by way of example and not limitation, any and all prior employment agreements; and constitutes the entire and whole agreement between them, related to the employment of Employee by Company.

14. **WAIVER.** One or more waivers of any covenant or condition by any of the parities hereto shall not be construed as a waiver of a further breach of the same covenant or condition.

15. <u>REMEDIES NOT EXCLUSIVE</u>. It is agreed that each and every right, remedy and benefit provided by this Agreement shall be cumulative and shall not be exclusive of any other of said rights, remedies and benefits, or of any other right, remedy and benefit allowed by law.

16. <u>CATCHLINE HEADINGS</u>. The catchline headings of any of the foregoing provisions shall not be a part of the provision itself or be used to construe the terms of the provisions more broadly or more narrowly than the text would indicate.

17. <u>SEVERABILITY</u>. The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision. The invalid or unenforceable provision shall be stricken and the agreement shall continue in full force and effect as if the said invalid or unenforceable provision had no appeared therein.

18: <u>COUNTERPARTS</u>. This Agreement may be executed in any number of counterparts, any one of which shall be considered an original. All counterparts shall be but one rgreement. it shall be binding upon each party who executes any counterpart, and upon the heirs, administrators and assigns of each such party.

19. <u>PRONOUNS</u>. The masculine, feminine and neuter pronoun, as well as the singular and plural pronouns may be used interchangeably.

20. <u>ARBITRATION</u>. Any dispute arising between Employee and Company related to this Agreement, or any part thereof, including disputes related to the performance or breach thereof, or any dispute related to Employee's employment by the Company shall be

submitted for Arbitration to the New York Stock Exchange, Inc., or the National Association of securities Dealers, Inc., whichever the Company shall select. Any court having jurisdiction over the matter shall enter judgment pursuant to the award of the arbitrators.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date hereinabove first written.

EMPLOYEE

Employee Signature

J. DEREK MAJKOWSKI
Print Name

OLDE DISCOUNT CORPORATION

By: _____
President

11