# Exhibit "G"

Service: **Get by LEXSEE®**
Citation: **2004 U.S. App. LEXIS 24249**

*116 Fed. Appx. 435, \*; 2004 U.S. App. LEXIS 24249, \*\**

DEUTSCHE POST GLOBAL MAIL, LTD., Plaintiff - Appellant, versus GERARD CONRAD, a/k/a Jerry; GUY H. GEMMILL, Defendants - Appellees, and POSTAL LOGISTICS INTERNATIONAL, a Maryland corporation, Defendant.

No. 03-2504

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

116 Fed. Appx. 435; 2004 U.S. App. LEXIS 24249

October 1, 2004, Argued
November 19, 2004, Decided

**NOTICE:** [\*\*1] RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the District of Maryland, at Baltimore. CA-03-863-JFM. J. Frederick Motz, District Judge. Deutsche Post Global Mail, Ltd. v. Conrad, 292 F. Supp. 2d 748, 2003 U.S. Dist. LEXIS 21214 (D. Md., 2003)

**DISPOSITION:** Affirmed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant employer sued appellee former employees, alleging that the employees breached a restrictive covenant prohibiting the employees from competing with the employer after they left their positions with the employer. The employer appealed the order of the United States District Court for the District of Maryland, at Baltimore, which granted summary judgment to the employees.

**OVERVIEW:** The employer operated an international mail company, and the employees terminated their employment and started their own competing company, providing service to a substantial number of the employer's customers. The employer contended that the restrictive covenant in the employee's contracts prohibited the employees from engaging in any activity which might adversely affect the interests of the employer, specifically including solicitation of the employer's customers. The court held that, although the employer had a legally protected interest in preserving its customer goodwill, the restrictive covenant was unenforceable since it was much broader than reasonably necessary to protect the employer's interest. Rather than limiting the covenant to preventing the employees from trading on the employer's goodwill, the covenant to refrain from any adverse activity prevented any kind of competition by the employees, regardless of whether the employees solicited or serviced the employer's customers. Further, the specific prohibition against soliciting the employer's customers was merely an example and was not severable from the single indivisible promise not to engage in adverse activity.

**OUTCOME:** The order granting summary judgment to the employees was affirmed.

**CORE TERMS:** restrictive covenant, covenant, customer, flexible, unenforceable, summary judgment, solicited, protected interest, enforceable, reasonably necessary, divert, goodwill, diverting, blue pencil, indivisible, duration, restrictive, soliciting, adversely, excised, reasonableness, competitor, overbroad, sweeping, engaging, serviced, restrictive covenants, undue hardship, indirectly, penciling

### LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Appeals > Standards of Review > De Novo Review

Civil Procedure > Summary Judgment > Standards of Review

*HN1* ⭐ An appellate court reviews a district court's summary judgment determination de novo. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard

*HN2* ⭐ Summary judgment is appropriate only when there is no dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). More Like This Headnote

Contracts Law > Types of Contracts > Employment Contracts

*HN3* ⭐ Under Maryland law a restrictive covenant will be sustained if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public. Four requirements must be met for a restrictive covenant to be enforceable: (1) the employer must have a legally protected interest, (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant cannot impose an undue hardship on the employee, and (4) the covenant cannot violate public policy. More Like This Headnote

Contracts Law > Types of Contracts > Employment Contracts

*HN4* ⭐ For a restrictive covenant to be enforceable, an employer must have a legally protected interest. Employers have a legally protected interest in preventing departing employees from taking with them the customer goodwill they helped to create for the employer. Restrictive covenants almost always serve a legitimate employer interest when they restrict former salespersons who serviced, solicited, and were in constant contact with customers. More Like This Headnote

Contracts Law > Types of Contracts > Employment Contracts

*HN5* ⭐ In assessing the reasonableness of the scope and duration of a restrictive covenant in an employment contract, a determination must be made based on the scope of each particular covenant itself; and, if that is not too broad on its face, the facts and circumstances of each case must be examined. More Like This Headnote

Contracts Law > Types of Contracts > Employment Contracts

*HN6* ⭐ Preventing any kind of competition by former employees is not a legally protected interest under Maryland law. More Like This Headnote

Contracts Law > Types of Contracts > Employment Contracts

HN7± If a restrictive covenant in an employment contract is unnecessarily broad, a court may blue pencil or excise language to reduce the covenant's reach to reasonable limits. However, under the blue pencil rule, the court may not rearrange or supplement the language of the restrictive covenant. The court can only blue pencil a restrictive covenant if the offending provision is neatly severable. More Like This Headnote

Contracts Law > Defenses > Public Policy Violations

HN8± When a promise in reasonable restraint of trade in a bargain has added to it a promise in unreasonable restraint, the former promise is enforceable unless the entire agreement is part of a plan to obtain a monopoly; but if full performance of a promise indivisible in terms would involve unreasonable restraint, the promise is illegal and is not enforceable even for so much of the performance as would be a reasonable restraint. More Like This Headnote

Contracts Law > Types of Contracts > Employment Contracts

HN9± Maryland courts excise restrictions that render an employment contract covenant overbroad only in circumstances in which the restrictions are contained in a separate clause or separate sentence. More Like This Headnote

Contracts Law > Types of Contracts > Employment Contracts

HN10± Under a flexible approach, before a court is permitted to modify the terms of a restrictive covenant to align the reasonable expectations of the parties, the court must first inquire into whether the restrictive covenant as a whole evidences a deliberate intent by the employer to place unreasonable and oppressive restraints on the employee/covenantee. More Like This Headnote

Contracts Law > Types of Contracts > Employment Contracts

HN11± A restrictive covenant in an employment contract must meet some threshold of facial reasonableness in order to be enforceable. More Like This Headnote

**COUNSEL:** ARGUED: Andrew Abbott Nicely, MAYER, BROWN, ROWE & MAW, Washington, D.C., for Appellant.

Harriet Ellen Cooperman, SAUL EWING, L.L.P., Baltimore, Maryland, for Appellees.

ON BRIEF: Gary A. Winters, MAYER, BROWN, ROWE & MAW, Washington, D.C., for Appellant.

Nicole Pastore-Klein, SAUL EWING, L.L.P., Baltimore, Maryland, for Appellees.

**JUDGES:** Before LUTTIG and MICHAEL, Circuit Judges, and Jackson L. KISER, Senior United States District Judge for the Western District of Virginia, sitting by designation.

**OPINION:**

[*436] PER CURIAM:

Deutsche Post Global Mail, Ltd. (DPGM) sued its former employees, Gerard Conrad and Guy

Gemmill, for breaching a restrictive covenant that prohibited them from competing with DPGM. The district court concluded that the restrictive covenant was unenforceable under Maryland law and awarded summary judgment to Conrad and Gemmill. We [**2] affirm, albeit on somewhat different reasoning.

I.

Conrad and Gemmill were hired as sales managers by International Postal Consultants (IPC) in June 1997 and January 1999, respectively. IPC, like DPGM, was an international mail company. Conrad and Gemmill, in their capacities as sales managers, solicited new customers for IPC and thereafter dealt with them on behalf of the company. Conrad and Gemmill worked out of IPC's Maryland headquarters and solicited customers from the Maryland, Virginia, and D.C. area. When Conrad and Gemmill started work for IPC, they executed employment agreements containing identical restrictive covenants. Section 5(a)(ii) of the contract contains the following restrictive covenant that is at issue in this case:

> (a) Sales Representative covenants and agrees that during the term of his/her employment with the Company, and [*437] in the event of and for a period of two (2) years following the termination of his employment with the Company for any reason, he/she shall not, without the prior written consent of the Company, directly or indirectly: . . .
>
> (ii) Engage in any activity which may affect adversely the interests of the Company or any Related [**3] Corporation and the businesses conducted by either of them, including, without limitation, directly or indirectly soliciting or diverting customers and/or employees of the Company or any related Corporation or attempting to so solicit or divert such customers and/or employees . . . .

J.A. 608-09, 621-22.

In July 2000 DPGM purchased all of the stock of IPC, and for six months thereafter IPC and DPGM continued to operate independently. When the six-month period ended, IPC was merged into DPGM, with DPGM assuming control of IPC's operations and hiring all of IPC's employees, including Conrad and Gemmill. By operation of Maryland's corporation law, DPGM succeeded to all of IPC's rights and obligations under the agreements with Conrad and Gemmill. Conrad and Gemmill continued in their roles as sales managers for DPGM, and DPGM did not enter into new employment agreements with the two men.

In February 2002 Conrad and Gemmill decided to form their own international mail business and chose the name Postal Logistics International (PLI). Within hours after quitting DPGM, Conrad and Gemmill solicited their first DPGM customer; and within days they were providing services to former [**4] DPGM customers. From its inception through April 7, 2003, PLI earned $1,316,560 in revenues, $1,165,295 of which was derived from former DPGM customers. Thirty-eight of PLI's fifty-six customers are former DPGM customers, and Conrad and Gemmill diverted at least twenty-eight of their own former DPGM customers from DPGM to PLI. Conrad and Gemmill do not dispute that they breached the restrictive covenant.

On March 25, 2003, DPGM sued Conrad and Gemmill in the United States District Court for the District of Maryland. DPGM sought damages and injunctive relief based on Conrad and

Gemmill's breach of the restrictive covenant. After discovery Conrad and Gemmill moved for summary judgment, and DPGM filed a cross-motion for partial summary judgment on the issue of liability. The district court held that the restrictive covenant is unenforceable under Maryland law because (1) it is broader in scope than is reasonably necessary to protect DPGM's business interests, and (2) it would impose undue hardship on Conrad and Gemmill. The court awarded summary judgment to Conrad and Gemmill and denied DPGM's cross-motion. DPGM now appeals.

II.

A.

HN1 We review a district court's summary judgment [**5] determination de novo. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002). HN2 Summary judgment is appropriate only when there is no dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We turn to whether Conrad and Gemmill are entitled to summary judgment on the ground that the restrictive covenant is unenforceable.

B.

HN3 Under Maryland law a restrictive covenant "will be sustained if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the [*438] business of the employer and do not impose undue hardship on the employee or disregard the interests of the public." Silver v. Goldberger, 231 Md. 1, 188 A.2d 155, 158 (Md. 1963) (citations omitted). A review of Maryland case law reveals four requirements that must be met for a restrictive covenant to be enforceable: (1) the employer must have a legally protected interest, (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the [**6] covenant cannot impose an undue hardship on the employee, and (4) the covenant cannot violate public policy. Id. at 158-59; Holloway v. Faw, Casson & Co., 319 Md. 324, 572 A.2d 510, 515-16 (Md. 1990). While DPGM can establish the first requirement, it cannot establish the second. We thus do not assess whether the restrictive covenant would meet the final two requirements.

HN4 For a restrictive covenant to be enforceable, an employer must have a legally protected interest. See Ruhl v. F.A. Bartlett Tree Expert Co., 245 Md. 118, 225 A.2d 288, 291-92 (Md. 1967); Silver, 188 A.2d at 158-59. Employers have a legally protected interest in preventing departing employees from taking with them the customer goodwill they helped to create for the employer. Silver, 188 A.2d at 158. Restrictive covenants almost always serve a legitimate employer interest when they restrict former salespersons who serviced, solicited, and were in constant contact with customers. Id. Conrad and Gemmill do not dispute that they serviced, solicited, and were in constant contact with customers of DPGM while employed there. Accordingly, we conclude [**7] DPGM has a legally protected interest in preventing Conrad and Gemmill from trading on the goodwill they helped to generate while employed at DPGM.

We next consider whether the scope and duration of the restrictive covenant is no broader than is reasonably necessary to protect DPGM's legally protected interest. HN5 In assessing the reasonableness of scope and duration, "a determination must be made based on the scope of each particular covenant itself; and, if that is not too broad on its face, the facts and circumstances of each case must be examined." Becker v. Bailey, 268 Md. 93, 299 A.2d 835, 838 (Md. 1973) (citation omitted). The restrictive covenant here is much broader than is reasonably necessary to protect DPGM's interest in the goodwill generated by Conrad and Gemmill. The restrictive covenant prohibits Conrad and Gemmill from engaging "in any

activity which may affect adversely the interests of the Company or any Related Corporation and the businesses conducted by either of them." J.A. 609, 622 (emphases added). The breadth of this covenant is sweeping. In no way is it specifically targeted at preventing Conrad and Gemmill from trading on the goodwill [**8] they created while serving DPGM customers. Rather, the restrictive covenant seems designed to [HN6]prevent any kind of competition by Conrad and Gemmill, which is not a legally protected interest under Maryland law. See Silver, 188 A. 2d at 158 ("[R]estraint is not justified if the harm caused by service to another consists merely in the fact that the former employee becomes a more efficient competitor just as the former employer did through having a competent and efficient employee.") (citation omitted). And yet stating that this covenant is aimed at stifling competition does not sufficiently describe its breadth. The covenant does not stop at preventing Conrad and Gemmill from competing against DPGM, but rather prohibits them from doing anything that "may affect adversely" the business interests of DPGM or its related companies. This language, taken literally, would restrict Conrad and Gemmill even from using a competitor's [*439] mail service for any purpose, business or personal.

DPGM cites to no Maryland case, and we have found none, in which a restrictive covenant similar in scope has been been deemed reasonable. Indeed, cases such as Holloway, 319 Md. 324, 572 A.2d 510, [**9] suggest that the covenant here is too broad. In Holloway a restrictive covenant that prohibited an accountant from practicing general accountancy within forty miles of his former firm was held to be overbroad. Id. at 512, 518-19. The covenant was too broad because it exposed the accountant to damages "even if [he] never render[ed] any service for [a firm] client." Id. at 518. In the present case the restrictive covenant would allow DPGM to recover damages against Conrad and Gemmill if they became competitors, yet never solicited or serviced any DPGM client. Because the covenant is much broader than is reasonably necessary to protect the goodwill that Conrad and Gemmill generated for DPGM, we hold that the covenant is unenforceable as written.

C.

DPGM does not seriously dispute that the restrictive covenant, as written, is unnecessarily broad and therefore unenforceable under Maryland law. Instead, DPGM argues that an excised version of the covenant is enforceable. Again, the covenant provides that a former employee cannot for two years "[e]ngage in any activity which may affect adversely the interests of the Company or any Related Corporation and the businesses [**10] conducted by either of them, including, without limitation, directly or indirectly soliciting or diverting customers and/or employees of the Company or any related Corporation or attempting to so solicit or divert such customers and/or employees." J.A. 609, 622. DPGM argues that section 5(a)(ii) can be saved by "blue penciling" out the sweeping promise not to engage in adverse activity. Thus, the covenant, with certain words excised, would read that for two years a former DPGM employee cannot "[e]ngage in soliciting or diverting customers of the Company or attempting to so solicit or divert such customers." The district court agreed with DPGM that blue penciling was permissible, but concluded that the excised version would still be unenforceable. We conclude that excision is inappropriate in this case.

[HN7]If a restrictive covenant is unnecessarily broad, a court may blue pencil or excise language to reduce the covenant's reach to reasonable limits. See Tawney v. Mut. System of Maryland, 186 Md. 508, 47 A.2d 372, 379 (Md. 1946). However, under the blue pencil rule, a court may not rearrange or supplement the language of the restrictive covenant. Fowler v. Printers II, Inc., 89 Md. App. 448, 598 A.2d 794, 802 (Md. Ct. Spec. App. 1991). [**11] A court can only blue pencil a restrictive covenant if the offending provision is neatly severable. According to the Maryland Court of Appeals, the principle underlying the blue pencil rule is articulated in the First Restatement of Contracts, which provides: [HN8]"When a promise in reasonable restraint of trade in a bargain has added to it a promise in unreasonable restraint, the former promise is enforceable unless the entire agreement is part of a plan to obtain a

monopoly; but if full performance of a promise indivisible in terms would involve unreasonable restraint, the promise is illegal and is not enforceable even for so much of the performance as would be a reasonable restraint." Holloway, 572 A.2d at 518 (quoting Restatement (First) of Contracts § 518). We must decide, then, whether section 5(a)(ii) of the employment contract constitutes one promise indivisible in terms (a promise not to engage in adverse activity) or two separate promises (a promise not to engage in adverse activity and a promise not to divert DPGM customers). We conclude that the section [*440] constitutes a single indivisible promise not to engage in adverse activity.

An examination of section 5(a)(ii) [**12] reveals that the promise not to divert DPGM clients is not a separate and distinct promise; it merely clarifies one of the many obligations imposed by the overarching promise of section 5(a)(ii). First, we note the overlapping nature of what is promised. The general promise not to engage in any adverse activity automatically encompasses a promise not to divert former customers. Second, the structure of the restrictive covenant itself indicates that it is really one promise. The word "including" is used to tie the prohibition against diverting DPGM customers to the broader promise. This suggests that the anti-diversion language is not a separate promise; instead, it is simply an example of adverse activity. Finally, we have not found any Maryland case in which a court has done what DPGM suggests here, that is, cross out the dominant language or words from a single-sentence restrictive covenant, leaving only a narrower example of the original, broader restriction. Rather, [HN9] Maryland courts have excised restrictions that render a covenant overbroad only in circumstances in which the restrictions are contained in a separate clause or separate sentence. See, e.g., Holloway, 572 A.2d at 518-19; [**13] Tawney, 47 A.2d at 379. The blue penciling that DPGM urges here would constitute an impermissible rewriting of the restrictive covenant. Because section 5(a)(ii) constitutes a single indivisible promise, it is not severable.

D.

DPGM makes two final arguments as to why the restrictive covenant should be enforced. Both are without merit.

1.

DPGM argues that Maryland courts have adopted the socalled flexible approach to enforcing restrictive covenants. The flexible approach allows a court to rewrite a restrictive covenant to align the reasonable expectations of the parties. This approach, DPGM argues, allows us to tailor the restrictive covenant's scope by rewriting its terms so that it only prohibits Conrad and Gemmill from soliciting and diverting DPGM clients with whom they had contact. We are not persuaded that the flexible approach can be used here.

First, it is not clear that Maryland has adopted the flexible approach. The flexible approach was used by the Maryland Court of Special Appeals in Holloway v. Faw, Casson & Co., 78 Md. App. 205, 552 A.2d 1311 (Md. Ct. Spec. App. 1988). On appeal, however, the Maryland Court of Appeals decided [**14] the case without adopting or endorsing the flexible approach. The Court of Appeals expressly refused to consider the "provocative questions" involved in considering the flexible approach. Holloway, 572 A.2d at 511, 524. And, in the fifteen years since Holloway was decided, no Maryland court has endorsed or discussed the flexible approach.

Second, and more importantly, even if the flexible approach can be used in Maryland, DPGM still cannot prevail. [HN10] Under the flexible approach, before a court is permitted to modify the terms of a restrictive covenant to align the reasonable expectations of the parties, the court must first inquire into whether "the restrictive covenant as a whole evidence[s] a deliberate intent by the employer to place unreasonable and oppressive restraints on the employee/covenantee." Holloway, 552 A.2d at 1327. If the covenant exhibits this deliberate

intent, then the entire covenant is unenforceable. Id. As written, section 5(a)(ii) prohibits Conrad and Gemmill from engaging in any activity, business or otherwise, that may adversely affect the interests of DPGM. This sweeping [*441] prohibition leads us to conclude that [**15] the restrictive covenant exhibits a deliberate attempt to impose unreasonable and oppressive restraints on Conrad and Gemmill.

2.

DPGM finally argues that we should allow it to seek damages on a breach-by-breach basis. DPGM argues that it should be permitted to recover damages for each breach of the restrictive covenant in which Conrad and Gemmill solicited DPGM customers with whom they had contact while at DPGM. It cites to the Maryland Court of Appeals case, Holloway, 319 Md. 324, 572 A.2d 510, for the proposition that when a court assesses an employer's claim for damages under a restrictive covenant, the court should look only at the individualized facts of each breach to determine whether it is reasonable to award damages for each particular breach. DPGM basically urges us to refrain from engaging in any analysis of the covenant's facial validity and instead focus solely on the facts of each alleged breach to determine whether an award of damages would be reasonable.

Under DPGM's interpretation of Holloway, an employer could draft a covenant that is unreasonably broad in scope, knowing that it could recover damages for any breach held to violate an interest [**16] that was reasonably deserving of protection. This approach would give employers no incentive to negotiate reasonable restrictive covenants in the first place; moreover, it is not consistent with Holloway. In Holloway the restrictive covenant prohibited an employee-accountant from practicing accountancy within forty miles of any of his employer's offices. 572 A.2d at 512. The Maryland Court of Appeals began its analysis of the reasonableness of the restrictive covenant's scope by examining the covenant on its face. Id. at 518. The court concluded that the covenant, as written, was too broad because the employee would be liable for damages even if he never rendered services to a client of the employer. Id. Due to the restrictive covenant's overbreadth, the court severed one of the damages provisions, the effect of which was to transform the restrictive covenant into a prohibition against servicing the employer's clients. Id. at 519. DPGM nevertheless relies on a comment made by the court after it severed the one provision: the court noted that the covenant might still be too broad because it would prohibit the employee from servicing employer clients [**17] with whom he had no contact. Id. at 520. The court, however, determined that this was irrelevant because every breach for which the employer had been awarded damages involved customers with whom the employee had contact. Id. at 521. While this reasoning does create some ambiguity, it is apparent that the Maryland Court of Appeals maintained the general requirement that [HN11] a restrictive covenant must meet some threshold of facial reasonableness in order to be enforceable. After all, the court began its analysis by assessing whether the covenant, as originally written, was reasonable on its face. Holloway, 572 A.2d at 518-19; see also Becker, 299 A.2d at 838 (holding that analysis of restrictive covenant must begin with a determination of whether it is "too broad on its face").

Like the restrictive covenant in Holloway, DPGM's restrictive covenant is overbroad on its face. Unlike the restrictive covenant in Holloway, DPGM's restrictive covenant cannot be saved by severing its offending provisions. The restrictive covenant is therefore unenforceable in its entirety, and DPGM cannot recover damages.

III.

We affirm the district court's [**18] order of November 14, 2003, awarding summary [*442] judgment to Conrad and Gemmill and denying partial summary judgment to DPGM.

AFFIRMED

Service: **Get by LEXSEE®**
Citation: **2004 U.S. App. LEXIS 24249**
View: Full
Date/Time: Tuesday, January 17, 2006 - 10:08 PM EST

* Signal Legend:
- ● - Warning: Negative treatment is indicated
-  - Questioned: Validity questioned by citing refs
- ⚠ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

●® LexisNexis®   About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.