UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

H&R BLOCK FINANCIAL ADVISORS,   :
INC.,                           :
                                :
        Plaintiff,              :
                                :
    v.                          :   Civil Action No. 06-0057 (JR)
                                :
J. DEREK MAJKOWSKI, *et al.*,   :
                                :
        Defendants.             :

**MEMORANDUM ORDER**

The defendants in this departing broker case are registered representatives who worked for plaintiff H&R Block Financial Advisors, Inc. until January 9, 2006, when they resigned and immediately began efforts to take as much of their business as they could to their new employer, Sun Trust Investment Services, Inc.  The defendants had intended to resign on January 13, the Friday before a long weekend, but they hastened their departure when H&R Block got wind of their plans.  H&R Block immediately sought injunctive relief.  I heard their application for a temporary restraining order on January 13 and granted it, setting the preliminary injunction motion down for hearing on January 23, 2006.  At the close of that hearing, I advised the parties that the TRO would be extended until the close of business January 24, 2006.  This memorandum -- more of an outline than an opinion in order to meet the January 24

deadline -- explains why the TRO will be allowed to lapse and the motion for preliminary injunction will be denied.

In recent years, the securities industry has come to grips with the serious public policy problems presented by its very restrictive employment contracts.  NASD Rule 11870 and NASD Interpretive Materials 2110-7 make it clear that clients must have free access to registered representatives of their choice and that "it is inconsistent with just and equitable principles of trade for a member or person associated with a member to interfere with a customer's request to transfer his or her account in connection with the change in employment of the customer's registered representative. . . ."

One of the registered representatives in this case, J. Derek Majkowski, signed a contract with H&R Block in 1994 that might justly be said to require him to "disappear from the face of the earth" if he should resign.  By its terms, the contract prohibited him, for three years, from performing brokerage business services for or accepting brokerage from any H&R Block customers with whom he had contact, from contacting or soliciting any such customers, from notifying such customers that he had resigned or where he is now employed, and even from complying with the request of a former customer to be served.  Justin Romero signed a contract, some years later, that imposed many of the same prohibitions on his conduct, although only for one year.

George Shirley's contract was the least restrictive -- it prohibited him from calling upon or soliciting business from former customers, but it also prohibited him from "tak[ing] a buy or sell order" from such customers.

H&R Block does not seek here to enforce the severe restrictions that those contracts would impose, perhaps recognizing that the law has moved on since they were signed and that the policies announced by the NASD restriction and Interpretive Material reflect the more dynamic and client-oriented commercial atmosphere that exists today.  But H&R Block invokes the severability clauses found in all three contracts and seeks to restrain the defendants at least from active solicitation of former H&R Block customers.

I was persuaded to grant the temporary restraining order on January 13 primarily by plaintiff's verified assertions that the defendants had left surreptitiously, that they had taken confidential materials from H&R Block files, and that they had indeed planned to make their break at the close of business before a long weekend in order to take maximum advantage of the surprise factor.  Now that H&R Block has responded to the motion for preliminary injunction, however, the record establishes that, although the defendants made off with a list of names and addresses of their former clients, the list has been returned, that H&R Block has taken steps to assign new account

representatives to their clients to mitigate the problems that the departure of the three registered representatives undeniably caused them, that at least some Block employees have employed their own response tactics, letting it be known that the defendants were "fired" from their employment, and that the midnight departure tactics employed by the three departed brokers was behavior that to some extent was learned in H&R Block's own school.

A court considering a motion for preliminary injunction must consider, and balance, four factors:

<u>Irreparable harm</u>.  Numerous courts have found that the damage caused to the employer in a departing broker situation is irreparable.  It is certainly correct that such damage cannot be accurately measured, but that, as I understand it, is one of the reasons for the NASD's arbitration process.  Irreparable injury certainly weighs on the plaintiff's side of the scale, but its weight is not substantial.

<u>Relative burdens</u>.  H&R Block complains that the departure of these three registered representatives potentially means the loss of sixty percent of the business of the Washington, D.C. office.  For the defendants, who are individuals, a significant restraint on their ability to solicit clients and earn commissions on client business has a heavier

weight than the loss of business from one office of a large corporate entity.

<u>Public interest</u>.  The NASD materials referred to earlier lay out what I believe to be the correct version of the public interest, which is indifferent to whether H&R Block or SunTrust is more successful in the marketplace and which is focused on the needs of the investing public.  If the public interest has any weight in the calculations presented by this case, it weighs on the side of open competition and vigorous solicitation -- on the defendants' side, in other words.

<u>Likelihood of success on the merits</u>.  This fourth factor is normally discussed first, but in this case it is difficult to evaluate.  Its weight, and where the weight should be placed, depends upon the answers to a number of questions: Does Michigan or District of Columbia law apply?  Do the severability provisions of the contracts and the case law involving "blue-lining" of contracts support H&R Block's view that I can grant the limited relief they seek, or are the defendants correct that I am being asked to "rewrite" their contracts?  Does the alleged "partnership" of the three registered representatives have any impact on likelihood of success on the merits?  If so, which way does it cut?  While these are interesting questions, they require more time for analysis than the business of securities brokerage business

allows.  They need to be taken up, if at all, in the NASD arbitration that lies before the parties.

What finally tips the scale in favor of the defendants is their undisputed assertion that H&R Block's standard operating procedure for recruitment and hiring instructs and encourages just the kind of behavior about which H&R Block is now complaining.  H&R Block protests that the defendants have not precisely raised an unclean hands defense, and perhaps they have not, but the Majkowski affidavit, as amplified at the oral argument, appears to establish that what happened in this case is business as usual in the brokerage community, that this is a competitive industry in which registered representative and their employers live by the sword and die by the sword, and that the employment of the extraordinary remedy of injunction in this dynamic milieu is unwise.

It is tempting to extend the injunctive relief granted on January 13 for another fifteen or twenty days as a way of invoking the accelerated procedures of NASD arbitration.  Indeed, if I understand the NASD procedures correctly, they seem to encourage the granting of preliminary relief so that judges can pass off the responsibility of dealing with these cases with the assurance that "someone else" will deal with them soon.  H&R Block has not made a sufficient showing of urgency in this court to warrant further extension of the temporary relief they have

enjoyed, however.  If they have a better case to make before the arbitration panel, they can seek injunctive relief there.

The motion for preliminary injunction [4] is **denied**.

JAMES ROBERTSON
United States District Judge